UNITED STATES of America ex rel. Richard D. BAGLEY, Plaintiff,

v.

TRW INC., Defendant.

No. CV95–4153–AHM(AJWx).

United States District Court, C.D. California, Western Division.

Feb. 5, 2003.

## MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DISCLOSURE STATEMENTS

WISTRICH, United States Magistrate Judge.

Before the court is defendant TRW Inc.'s motion to compel plaintiff United States of America ("the government" or "plaintiff") and relator Richard D. Bagley ("relator") (collectively, "plaintiffs") to produce several disclosure statements prepared by relator and his counsel and provided to plaintiff in compliance with the False Claims Act (the "Act"). *See* 31 U.S.C. § 3730(b)(2). The court has considered the papers filed by the parties (including the supplemental papers filed as recently as September 2002), and the arguments made by counsel during the hearing on the motion.

Section 3729 of the Act prohibits the knowing presentation of a false claim for payment to an officer or employee of the government. *See* 31 U.S.C. § 3729(a). The Act authorizes a person (the relator) to file a civil action alleging a violation of section 3729 on behalf of the person and the government. *See* 31 U.S.C. § 3730(b)(1). The Act, however, requires that the person serve on the government a "written disclosure of substantially all material evidence and information the person possesses" along with a copy of the complaint. 31 U.S.C. § 3730(b)(2). The purpose of the written disclosure requirement "is to provide the United States with enough information on alleged fraud to be able to make a well reasoned decision on whether it should participate in the filed lawsuit or allow the relator to proceed alone." *United States ex rel. Woodard v. Country View Care Center, Inc.,* 797 F.2d 888, 892 (10th Cir.1986) (construing section 3730(b) prior to its amendment in 1986); *accord, United States ex rel. Koch v. Koch Industries, Inc.,* 1995 WL 812134, at *9 & n. 11 (N.D.Okla.1995); *United States ex rel. Stinson, Lyons, Gerlin & Bustamante, P.A. v. Blue Cross Blue Shield of Georgia, Inc.,* 755 F.Supp. 1040, 1053 (S.D.Ga.1990); *see generally United States ex rel. Purcell v. MWI Corp.,* 209 F.R.D. 21, 26 (D.D.C.2002) ("The FCA aims to advance the twin goals of (1) rejecting suits which the government is capable of pursuing itself while *(2) promoting those which the government is not equipped to bring on its own.")* (emphasis in original).

Few reported decisions construe the nature and extent of the relator's disclosure obligation under section 3730(b)(2). *See, e.g., United States ex rel. Made in the USA Foundation v. Billington,* 985 F.Supp. 604, 608 (D.Md.1997) (noting that "scant authority

exists delineating what constitutes" a legally sufficient disclosure statement). Some decisions have suggested that a disclosure statement should contain only facts. *See United States ex rel. O'Keefe v. McDonnell Douglas Corp.*, 918 F.Supp. 1338, 1346 (E.D.Mo.1996) ("The written disclosure statement should simply contain all the relevant factual information in [the relator's] possession at the time he filed suit."); *United States ex rel. Burns v. A.D. Roe Co.*, 904 F.Supp. 592, 594 (W.D.Ky.1995) (explaining that a disclosure statement "is simply a recitation of factual information"); *United States ex rel. Robinson v. Northrop Corp.*, 824 F.Supp. 830, 838– 839 (N.D.Ill.1993) (stating that the disclosure obligation "requires only a statement of facts," and concluding that a disclosure statement "should not contain opinions of an attorney"); *United States ex rel. Stone v. Rockwell Intern. Corp.*, 144 F.R.D. 396, 401 (D.Colo.1992) (stating that a written disclosure statement "contains nothing more than the evidence and information which must come to light in any event once the case proceeds"). Other courts, by contrast, have recognized that a disclosure statement may include additional information, such as legal theories, analysis, and opinion. *See, e.g., Made in the USA Foundation*, 985 F.Supp. at 608 (explaining that a disclosure statement "should, at a minimum, comprise much of what [the relator] will rely upon to support the contentions in the case at bar.... While not a prerequisite necessary to satisfy the disclosure requirement, the Court believes more than a mere recitation of facts, available to the government, is required.")(internal quotation marks and citations omitted); *Grand ex rel. United States v. Northrop Corp.*, 811 F.Supp. 333, 337 (S.D.Ohio 1992) (acknowledging the possibility that the disclosure statement at issue might contain legal analysis and opinion in addition to facts). This inconsistency in the reported decisions finds a parallel in the practices of relators' counsel, who invest different levels of effort in preparing disclosure statements. *See* Eric R. Havian, Discoverability of Statutory Disclosure Statement and Recovery of Statutory Attorneys' Fees in False Claims Act Qui Tam Cases, N98CFCB ABA–LGLED L–13, L–15 (November 19–20, 1998) (noting that some counsel representing a relator "prepare very detailed narratives of the evidence, including analysis by counsel of the legal and factual issues in the case and suggestions to the government regarding how to pursue its investigation. Obviously, the government greatly appreciates such efforts, which simplify the task of sorting through an increasing number of qui tam complaints. At the other end of the spectrum, some attorneys simply place a cover sheet on an undifferentiated stack of documents and allow the government to sort it out.")(footnote omitted).

Of the two views, the one favoring inclusion of analysis as well as facts seems more consonant with the purpose of section 3730(b)(2). As one commentator has observed, courts construing section 3730(b)(2) to permit only factual disclosures

> overlook the fact that the Disclosure Statement is much more than a mere recitation of evidence. Ideally, the Disclosure Statement distills often complex facts and law into a narrative statement intended to inform the government of the nature of the claims the relator asserts on its behalf. There is no support for the suggestion that Congress intended otherwise. As one of the authors of the 1968 amendments to the False Claims Act stated:

> > The law that we vote on today is intended to encourage a working partnership between both the Government and the qui tam plaintiff. The public will be served by having more legal resources brought to bear against those who defraud the Government.... This is precisely what the law is intended to do: deputize ready and able people who have knowledge of fraud against the government to play an active and constructive role through their counsel to bring to justice those contractors who overcharge the government.

> It promotes, rather than undermines that congressional purpose if the Disclosure Statement provides the Justice Department with a complete analysis of the factual and legal issues in the case.

*Havian, supra,* at L–13 (quoting 132 Cong. Rec. H9388 (October 7, 1986) (statement of Representative Berman)); *see also* S. Report

No. 345, 99th Cong., 2nd Sess., at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5272 ("[P]erhaps the most serious problem plaguing effective enforcement is a lack of resources on the part of Federal enforcement agencies.... Federal auditors, investigators, and attorneys are forced to make 'screening' decisions based on resource factors. Allegations that perhaps could develop into very significant cases are often left unaddressed at the outset due to a judgment that devoting scarce resources to a questionable case may not be efficient.")(footnoted omitted); 132 Cong. Rec. H9388 (October 7, 1986) (statement of Representative Berman) (explaining that with certain exceptions prescribed by statute, the court should fix the relator's share of a damages award substantially above the statutory minimum and as high as the prescribed maximum "where the person carefully develops all the facts and supporting documentation necessary to make the case and presents it in a thorough and detailed fashion to the Justice Department as required by law, and where that person continues to play an active and constructive role in the litigation that leads ultimately to a successful recovery to the United States Treasury"). The statutory purpose of the disclosure requirement, then, is best served by treating disclosure statements in a manner that encourages the relator and his or her counsel to make them as complete, detailed, and thoughtful as possible.

A relator preparing a disclosure statement today, however, is in a bind. In one sense it is in the relator's selfish best interest to make his or her disclosure statement as complete, well-organized, and persuasive as possible. Otherwise, the relator runs the risk that the government may decline to intervene (in which case the expense and burden of prosecuting the action alone may be prohibitive for the relator), or that the government may move to dismiss the action on one of the grounds enumerated in the statute. The inadequacy of the relator's disclosure is one such ground for dismissal. *See* 31 U.S.C. § 3730(b)(2) & (e); *Made in the USA Foundation*, 985 F.Supp. at 608–609 (dismissing the relators' claim because they did not provide the government with an adequate disclosure statement); *see generally* Robert Salcido, The Government Declares War on Qui Tam Plaintiffs Who Lack Inside Information: The Government's New Policy to Dismiss These Parties in False Claims Act Litigation, 13 No. 1 Health Law. 1, 4 (October 2000).[1] On the other hand, it also is in

---

1. Prior to its amendment in 1986, the Act provided that if the government did not intervene, "the court shall dismiss an action brought by the person on discovering the action is based on evidence or information the Government had when the action was brought." *See* Historical and Statutory Note foll. 31 U.S.C. § 3730; *Woodard*, 797 F.2d at 892. That provision was located in section 3730(b), which also contained the written disclosure requirement. *See* 31 U.S.C. § 3730(b)(2) & (b)(4) (1985). Thus, a secondary purpose for the disclosure requirement before 1986 was "to allow the government to determine whether it previously possessed the information on which the suit is based thereby giving the government an opportunity to defeat the district court's jurisdiction over the qui tam action." *Woodard*, 797.F.2d at 892.

  Contrary to defendant's argument, former subsection (b)(4) is inapplicable because "Congress amended the [Act] in 1986 ... to permit qui tam suits based on information in the Government's possession, except where the suit was based on information that had been publicly disclosed and was not brought by an original source of the information." *Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 946, 117 S.Ct. 1871, 138 L.Ed.2d 135 (1997) (citing 31 U.S.C. § 3730(e)(4)(A)). Subsection(e), which was added to section 3730 by the 1986 amendments, provides that district courts lack jurisdiction over certain qui tam actions, including those based on allegations or transactions which are the subject of a civil suit or administrative proceeding in which the government already is a party and those based on the "public disclosure" of allegations in specified fora when the relator is not the "original source" of the information. *See* 31 U.S.C. § 3730(e).

  To the extent that defendant argues that discovery of the disclosure statements should be allowed to enable a defendant to challenge a relator's standing, that argument is rejected. First, defendant does not argue that any bar enumerated in section 3730(e) applies to this case. Second, defendant has cited no controlling authority to support its position, and the court is not aware of any. Third, the relator's disclosure obligation "inures to the benefit of the government," not to the benefit of the defendant. *Stinson, Lyons, et al.*, 755 F.Supp. at 1054 (explaining that as to the defendant, the written disclosure "is neither a right or a remedy. It is an ancillary procedural requirement of the exercise of the right created by the statute."). The government has both the ability and the incentive to invoke section 3730(e) when it would bar the

the relator's selfish best interest to avoid full and candid discussion of the strengths or weaknesses of his or her claims in a disclosure statement if there is a risk that it may have to be turned over to the defendant. Forcing the relator to navigate unerringly at his or her peril the narrow passage between the Scylla of too little disclosure and the Charybdis of too much disclosure may be unfair and probably makes little sense. If the purpose of the disclosure requirement—to place in the hands of the government information from which it can promptly and efficiently make a sound determination about to whether to intervene—is to be promoted, it is necessary that relators' be able to predict with a high level of confidence *ex ante* whether material contained in disclosure statements will have to be turned over to defendants. An *ex post* test, the outcome of which cannot be predicted with a high level of confidence *ex ante*, is undesirable because if there is uncertainty about the matter, then relators' may skimp on the contents of disclosure statements, thereby lessening their value as a screening tool for the government. Therefore, leaving open the question whether disclosure statements—or particular sentences contained therein—must be turned over to a qui tam defendant will tend to defeat the goals of section 3730(b)(2). Accordingly, the statutory purpose of the disclosure requirement is best promoted by a bright-line rule precluding discovery of all portions of disclosure statements or drafts thereof.

No such bright-line rule shielding disclosure statements from discovery presently exists. The Act itself does not explicitly prohibit discovery of disclosure statements. *See O'Keefe*, 918 F.Supp. at 1345–46 (explaining that because "[t]he statute simply does not address the issue of discoverability," the court "will be guided by" the federal rules governing discovery); *see also Burns*, 904 F.Supp. at 593 (stating that the Act does not state or suggest that disclosure statements are privileged); *Stone*, 144 F.R.D. at 398–399 (stating that "nothing in the language of the statute" supports the notion that there is a statutory prohibition against producing disclosure statements to a defendant). In addition, reported decisions expressly addressing the issue uniformly have concluded that disclosure statements are not protected by the attorney-client privilege. *See, e.g., United States ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 682–683 (S.D.Cal.1996) (holding that the communications contained in the relator's disclosure statements were not protected by the attorney-client privilege because they were neither made in confidence nor made for the purpose of seeking legal advice); *Burns*, 904 F.Supp. at 594 (same); *Stone*, 144 F.R.D. at 399–400 (same).[2]

Plaintiffs contend, however, that disclosure statements are protected from discovery by the attorney work product doctrine. *See* Fed.R.Civ.P. 26(b)(3). In response, defendant argues that disclosure statements do not qualify as attorney work product, and that even if they did, defendant has demon-

relator's action. Fourth, there is no basis for concluding that defendants in qui tam actions are entitled, or need, to discover the disclosure statement in order to mount a jurisdictional challenge. Like other civil litigants, a qui tam defendant can look to the complaint, which must be pleaded with particularity in compliance with Rule 9(b) of the Federal Rules of Civil Procedure. *See Stinson, Lyons, et al.*, 755 F.Supp. at 1052–1053 (holding that a qui tam complaint failed to satisfy Rule 9(b), which exists "to eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed" and to protect against frivolous lawsuits). In addition, the defendant has recourse to ordinary disclosure and discovery procedures to ascertain the facts relating to subject matter jurisdiction. *See generally* Fed.R.Civ.P. 26. Thus, there is no reason to assume that a defendant would be unable to challenge the relator's standing without access

to the disclosure statement. Finally, there appear to be few circumstances in which a defendant could not obtain the information relevant to a section 3730(e) challenge from sources other than the disclosure statement. If, however, such a challenge could not be resolved without recourse to information contained in a disclosure statement, the court would not be prohibited from reviewing the document *in camera* or from ordering appropriate disclosure in that "rare and extraordinary" circumstance. *See United States ex rel. Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 683–684 (S.D.Cal.1996).

2. In one unreported decision, *United States ex rel. Taxpayers Against Fraud v. Litton Systems, Inc.*, CV 88–2276 (C.D.Cal.1990), the court held that the relators' written disclosures were protected both by the work product doctrine and the attorney-client privilege.

strated "substantial need" justifying discovery of the factual information contained in them.

Rule 26(b)(3) of the Federal Rules of Civil Procedure provides, in relevant part:

[A] party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3); *see Griffith v. Davis,* 161 F.R.D. 687, 698 (C.D.Cal.1995) (discussing Rule 26(b)(3)). "Work product protection is designed to preserve the privacy of attorneys' thought processes, and to prevent parties from 'borrowing the wits of their adversaries.'" William W Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial* ¶ 11:39 (2002)(citing *Hickman v. Taylor,* 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947) and *Holmgren v. State Farm Mut. Auto. Ins. Co.,* 976 F.2d 573, 576 (9th Cir.1992)). Work product may include documents prepared by a party, as well as by the party's attorney. *See Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona,* 881 F.2d 1486, 1494 (9th Cir.1989) ("The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation.") (citing Fed. R.Civ.P. 26(b)(3)); *United States v. Medica-*

*Rents Co.,* 2002 WL 1483085, at *2 n. 5 (N.D.Tex.2002) ("The work-product doctrine extends to documents prepared for litigation or trial by the adverse party himself.") (citing *Aiken v. Texas Farm Bureau Mutual Insurance Co.,* 151 F.R.D. 621, 624 n. 4 (E.D.Tex. 1993)). Rule 26(b)(3) distinguishes between "opinion" work product, which consists of the "mental impressions, conclusions, or legal theories of an attorney or other representative of a party," and "ordinary" or "factual" work product, which consists of factual material prepared in anticipation of litigation or trial. *See, e.g., Burroughs,* 167 F.R.D. at 684; *Stone,* 144 F.R.D. at 401. Absent a waiver, opinion work product enjoys nearly absolute protection and is discoverable only in "rare and extraordinary circumstances," while ordinary work product is discoverable upon a showing of "substantial need" and "undue hardship." *Burroughs,* 167 F.R.D. at 683–684; *see Holmgren,* 976 F.2d at 576–577 (holding that opinion work product "may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling," and stating that such a determination must be made on a case by case basis) (emphasis in original).

■ Most courts considering the application of the attorney work product doctrine have held that disclosure statements prepared pursuant to section 3730(b)(2) were work product because they were prepared "in anticipation of litigation." *See Burroughs,* 167 F.R.D. at 683–685 (holding that even if the disclosure statement was not opinion work product, it was ordinary work product because it was prepared in anticipation of litigation); *O'Keefe,* 918 F.Supp. at 1346 (holding that a disclosure statement is work product because "[t]he plain language of the [Act] requires the relator to prepare the document 'in anticipation of litigation'")(citing 31 U.S.C. § 3730(b)(2)); *Burns,* 904 F.Supp. at 594 (indicating that a disclosure statement was work product, but concluding that defendants had made a sufficient showing to justify disclosure)[3]; *Stone,* 144

---

**3.** In *Burns,* the court prefaced its discussion of the attorney work product doctrine by stating that the disclosure statement was not "attorney work product." The court's analysis, however, suggests that it concluded that the statement was factual work product, but nevertheless was discoverable because of the defendants' showing of

F.R.D. at 401 (classifying a disclosure statement as "factual work product"); *see also Grand*, 811 F.Supp. at 337 (ordering production of a disclosure statement after redaction of the opinions and analysis of the relator's counsel, but without expressly stating that the disclosure statement was work product).[4] Those decisions, however, do not address two issues that might affect the availability of work product protection.

The first issue arises from the dual function served by disclosure statements. Although disclosure statements undoubtedly are prepared "in anticipation of litigation," they also are prepared for another purpose: to satisfy the statutory disclosure requirement which is a prerequisite to suit. If a document is created both in anticipation of litigation and for a distinct, unrelated purpose, the "policies that inspire the work product doctrine are wholly inapplicable" because the document "would have been generated whether or not litigation was pending . . . ." *Griffith*, 161 F.R.D. at 699 (citing *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D.Cal.1987)). This case, however, is distinguishable from *Griffith* because here the litigation purpose and the "non-litigation" purpose are inseparably intertwined. Although required by statute, disclosure statements would not be created "but for" the prospect of litigation, and they are prepared to aid the litigation of claims under the Act. Therefore, the fact that they are required by statute does not rob disclosure statements of their work product status. *See Griffith*, 161 F.R.D. at 698 (stating that "the *primary* motivating purpose behind the creation of the materials must be as an aid in possible future litigation")(emphasis in original); *Colonial Gas Co. v. Aetna Cas. & Sur. Co.*, 144 F.R.D. 600, 605 (D.Mass.1992) ("The perti-

nent test is: whether in light of the nature of the document and the factual situation in the particular case the document can fairly be said to have been prepared or obtained because of the prospect of litigation."); *cf. United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir.1998) ("[A] document created because of anticipated litigation . . . does not lose work-product protection merely because it is intended to assist in the making of a business decision influenced by the likely outcome of the anticipated litigation. Where a document was created because of anticipated litigation, and would not have been prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3)."). Moreover, in this case, unlike the situation presented in *Griffith*, there is a strong statutory policy of encouraging full disclosure to the government, an entity which—in the memorable words of Representative Berman—is intended to be part of a "working partnership" with the relator.

■ The second issue is whether relators waive work product protection when they provide disclosure statements to the government. A "primary function" of the work product doctrine "is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigative and analytical effort, and strategies for developing and presenting the client's case." *Burroughs*, 167 F.R.D. at 685. Therefore, a waiver may occur when a party discloses work product in a manner that "increase[s] the likelihood that a current or potential opponent in the litigation would gain access to the documents in question." *Burroughs*, 167 F.R.D. at 685 (citing *Bank of the West v. Valley National Bank*, 132 F.R.D. 250, 262 (N.D.Cal.1990) and *In re Subpoenas Duces*

need and hardship. *See Burns*, 904 F.Supp. at 594.

4. In *Robinson*, 824 F.Supp. at 838–839, the court granted the defendant's motion to compel production of a disclosure statement "[b]ecause the document should not contain opinions of an attorney, and because it already has been shown to persons other than plaintiffs and their representatives," that is, to the government. The court did not explain whether it concluded that the disclosure statement was not work product, or that it was work product, but that the plaintiffs

nevertheless were required to produce it. The court, however, cited cases holding that the disclosure statement was work product, and it also noted that the plaintiffs had not requested redaction of their attorneys' analysis and opinions in the event the disclosure statement was ordered to be produced. *Robinson*, 824 F.Supp. at 839 (citing *Stone*, 144 F.R.D. at 401 and *Grand*, 811 F.Supp. at 337). Therefore, it appears that the court assumed that the disclosure statement was work product, but concluded that it was not shielded from discovery.

*Tecum,* 738 F.2d 1367, 1374–1375 (D.C.Cir. 1984)); *see also In re Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289, 304–307 (6th Cir.2002) (discussing waiver of work product protection), *petition for cert. filed,* 71 U.S.L.W. 3429 (Dec. 9, 2002) (No. 02–888).

At the time a disclosure statement is prepared pursuant to section 3730(b)(2), the government has not intervened and is not a co-party. The government may decline to intervene, and it subsequently may take actions adverse to the relator, such as moving to dismiss or contesting the relator's share of any recovery. Nonetheless, it would be antithetical to the language and purposes of the Act to characterize the government as an adversary or potential adversary of the relator at the time when the required written disclosure occurs. As one court observed:

> [B]y the very language of the [Act], Congress has made it clear that it intended to align the interests of the relator with the interests of the government in these cases. By allowing the relator to bring the action "in the name of the Government" and by allowing the relator to receive a percentage of the proceeds that the government recovers, the legislature left no doubt that the relator is acting on behalf of the government. Indeed, the [qui tam] plaintiff and the government essentially stand in the same shoes as against the defendants.... Additionally, the statute promotes only those cases in which the government works together with the relator
> ....

*Purcell,* 209 F.R.D. at 26 (internal quotation marks and citations omitted). Furthermore, complying with the disclosure obligation is distinguishable from voluntarily disclosing information to an adverse party in order to gain some strategic benefit or tactical advantage. *See, e.g., In re Columbia/HCA Healthcare Corp.,* 293 F.3d at 305–306 (holding that a healthcare provider's disclosure of documents to a government agency investigating it waived work product protection for those documents in subsequent civil litigation). Although the relator voluntarily initiates a qui tam action, finding a waiver would frustrate the purposes of the Act because it would penalize the relator for doing what he or she is obliged to do in order to continue the suit, and discourages the sort of comprehensive disclosure most likely to facilitate the government's evaluation of the merits and its choice about whether to intervene. *See Purcell,* 209 F.R.D. at 27 (explaining that "the unique relationship of the government and the relator in qui tam cases requires the sharing of work product generated between the relator and his attorney with the government in order for the case to proceed").

Although the government clearly is not intended to be adverse to the relator, there is some indication that the government occasionally may provide a disclosure statement to a defendant. *See Havian, supra,* at L–17. [*See also* United States' Response to Request for Supplemental Information Regarding United States' Past Production and Use of Relators' Disclosure Statements ("Plaintiff's Supplemental Response") at 1–3]. In its Supplemental Response, the government maintains that "(1) relators' disclosure statements are very rarely produced by the United States to defendants absent a Court Order or the permission of the relator and (2) relators' disclosure statements are, on rare occasions, used adverse to the relators' interests." [Plaintiff's Supplemental Response at 2–3]. Examples of uses adverse to the relator are: (a) to justify the government's position in a dispute over the relator's share of a recovery, (b) to demonstrate that the relator is not the "original source" of the information alleged in the complaint, and (c) to demonstrate that the relator's complaint should be dismissed for failure to state a claim. [*See* Plaintiff's Supplemental Response at 2]. Although nothing of the sort has happened in this case, the court has no way of knowing precisely how frequently the government makes use of disclosure statements in a manner adverse to the relator, or, perhaps more to the point, how often such adverse use results in their disclosure to a defendant before liability has been determined.

As explained above, however, the relator and the government are not adverse when the required disclosure occurs, and one of the purposes of the Act is to ally relators with the government to uncover and reme-

dy fraud against the government. *See United States ex rel. [Redacted] v. [Redacted]*, 209 F.R.D. 475, 479 & n. 3 (D.Utah 2001) (holding that the substance of discussions between the government and the relators incident to the government's investigation into the relator's claims were protected work product because "[a]t this point in the litigation," the government and relators "share a community of interest," even though their interests subsequently might diverge); *cf. Griffith*, 161 F.R.D. at 692 n. 6 (noting that "the interests of the parties involved in a common defense need not be identical" and "may even be adverse in some respects"). If, notwithstanding the intent of the Act, disclosure statements often were revealed to the defendant by the government before liability was determined, that might count in favor of finding a waiver. Nothing in the record, however, suggests that such disclosures are common. This is unsurprising because routinely revealing disclosure statements to defendants would tend to discourage relators from preparing thorough and helpful disclosure statements, thereby requiring that the government either expend additional resources investigating qui tam cases or risk making unsound decisions about whether to intervene. Since it is probable that the government would provide a disclosure statement to the defendant only in unusual circumstances, the opportunity for potential adversaries to obtain the information is not "substantially increased" by the fact that the information is provided to the government in a disclosure statement. *See Griffith*, 161 F.R.D. at 699 (quoting *Samuels v. Mitchell*, 155 F.R.D. 195, 200–201 (N.D.Cal.1994)). Accordingly, the relator's written disclosure to the government pursuant to section 3730(b)(2) does not operate as a waiver of work product protection.

This result is consistent with several decisions holding that the "common interest" or "joint prosecution" doctrine applies to prevent the relator's disclosures of work product (including the written disclosure statement) to the government from operating as a waiver. *See Medica–Rents Co.*, 2002 WL 1483085, at *2 (holding that no waiver occurred because the joint prosecution privilege shielded the relators' disclosures to the government of memoranda and other work product during the period when the government was deciding whether to intervene); *Purcell*, 209 F.R.D. at 26–27 (noting that the "weight of the limited authority favors the government's position that a joint-prosecutorial privilege exists" between the government and the relator in qui tam cases, and holding that in cases in which the government has intervened, such a "privilege" exists and extends to disclosures of work product by the relator and his counsel); *United States ex rel. [Redacted]*, 209 F.R.D. at 478–479 (holding that the "common interest doctrine" prevented disclosure of the content of discussions between the relators and the government "in furtherance of the [government's] investigation" from constituting a waiver of work product protection); *Burroughs*, 167 F.R.D. at 685–686 (holding that the relator and the government "are essentially the same party" and can assert a "joint prosecution privilege" to avoid a waiver of work product immunity); *see also Miller, Anderson, Nash, Yerke & Wiener v. United States Dep't of Energy*, 499 F.Supp. 767, 771 (D.Or.1980) (holding that a party did not waive the attorney-client privilege by turning a privileged memorandum over to a government agency "with similar interests" which was in the process of deciding whether or not to intervene in a lawsuit).

■ Defendant has represented, however, that plaintiffs already have provided defendant with redacted versions of the disclosure statements regarding three of plaintiffs' claims. [*See* Joint Stipulation at 2]. To the extent that the government or relator already has produced any disclosure statements to defendant, whether in whole or in part (such as in redacted form), plaintiffs have waived work product protection as to the portions already revealed to defendant.

■ Although the disclosure statements qualify as work product, the level of protection from disclosure depends on whether they are characterized as "opinion" work product, "ordinary" work product, or both. The disclosure statements in this case were prepared by relator and his counsel. [*See* Declaration of Jeffrey Wexler in Opposition

to Motion to Compel at 3–5]. Plaintiff lodged the disclosure statements (without the attached exhibits) under seal, and the court has reviewed them. The disclosure statements consist of: (1) a narrative of the specific facts and evidence relator contended were material to his claims; (2) an analysis of the facts and evidence in light of the legal standards relator deemed relevant to show wrongdoing by defendant; and (3) a set of supporting exhibits. Some, but not all, of the disclosure statements include a discrete section that sets forth predominantly factual background, but in all of them, facts are interwoven with analysis, opinion, and conclusions in other sections.

Analysis of the second and third components is unproblematic. The second component—legal analysis and opinion—plainly constitutes opinion work product because it consists of the "mental impressions, conclusions, opinions, or legal theories" of relator and relator's counsel, and therefore should be absolutely protected from disclosure. *See* Fed.R.Civ.P. 26(b); *Burroughs,* 167 F.R.D. at 684. The third component—the supporting exhibits—is not at issue here. Plaintiffs have represented that all of the documents attached as exhibits to the disclosure statements have been produced to defendant. [*See* Joint Stipulation at 6 ¶ 13; Declaration of David W. Long in Opposition to Defendant's Motion to Compel at ¶ 4].

Analysis of the first component—the narrative—is more challenging. At a minimum, the narrative is "ordinary" work product entitled to qualified protection, but it arguably merits the even greater, nearly absolute protection afforded to opinion work product. Where the selection, organization, and characterization of facts reveals the theories, opinions, or mental impressions of a party or the party's representative, that material qualifies as opinion work product. *See Burroughs,* 167 F.R.D. at 684–685 (stating that if the "organization and characterization of the facts and evidence presented [in the disclosure statement] would indeed reveal plaintiff's counsel's assessment of the strength of such facts and evidence (which would, in turn, reveal plaintiff's counsel's mental impressions, opinions and theories about the

case)," then the disclosure statements would qualify as opinion work product, and observing that although the court had not yet reviewed the documents, "it would difficult for the court to see how the documents could be characterized as anything other than 'opinion-work product,' specifically protected from disclosure ...."); *see also Hickman,* 329 U.S. at 510–511, 67 S.Ct. 385 ("Proper preparation of a client's case demands that [an attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways ...."); *Sporck v. Peil,* 759 F.2d 312, 316 (3rd Cir.) (stating that "[o]pinion work product includes such items as an attorney's legal strategy, his intended lines of proof, his evaluation of the strengths and weaknesses of his case, and the inferences he draws from interviews of witnesses"), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 230 (1985); *Connolly Data Systems, Inc. v. Victor Technologies, Inc.,* 114 F.R.D. 89, 96 (S.D.Cal.1987) (holding that under Rule 26(b)(3), the plaintiff's counsel could not attempt to elicit "the facts to which [the defendant's] attorney appeared to attach significance or any other matter that reveals [the defendant's] attorney's mental impressions, theories, conclusions or opinions concerning the case").

In connection with a prior motion to compel discovery in a related case, defendant relied on this same principle when it argued that the government should not be permitted to copy or record the documents which defendant selected for copying from among the documents the government produced in response to defendant's discovery requests. [*See* Order filed December 8, 1998, in *United States ex rel. Bagley,* CV 94–7755 AHM (AJWx) ("*Bagley I*"), at 1 (attached as Ex. 1 to the Declaration of Eric Havian in Opposition to Motion to Compel)]. In granting defendant's motion for a protective order, the court noted that there was no controlling authority on point and that persuasive au-

thority was inconsistent, but that in the court's view,

> the selection of documents does convey information about an attorney's mental impressions or strategy pertaining to a case, and therefore constitutes opinion work product, although the extent to which it does so varies from case to case. Sometimes the light shed on the mental impressions of counsel by disclosure will be so dim as to be de minimis, and reasonably may be subordinated to practical concerns. In the circumstances of this case, the document production procedure insisted upon by the government would reveal the opinion work product of TRW's counsel and give the government a free ride on the effort and investment of TRW's counsel in reviewing and selecting documents and in preparing TRW's defense.

[Order filed December 8, 1998, in *Bagley I* at 1–2]. *See also Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327–1329 (8th Cir.1986)(holding that defense counsel's awareness of the existence of certain documents was work product because her "selective review" of documents in anticipation of litigation "was based upon her professional judgment of the issues and defenses involved in this case," and therefore her mere acknowledgment that she remembered and was aware of those documents would reveal her mental impressions); *Sporck,* 759 F.2d at 316 (holding that the defendant's counsel's "selecting and ordering a few documents out of thousands ... could not help but reveal important aspects of his understanding of the case," and therefore that counsel's selection of documents constituted "highly-protected" opinion work product); *James Julian, Inc. v. Raytheon Co.*, 93 F.R.D. 138, 144 (D.Del.1982)(holding that a binder of documents selected by counsel was protected from disclosure because "the process of selection and distillation is often more critical than pure legal research").

The principles set forth in the December 8, 1998, order apply not just to the selection and organization of documents, but also to the selection, organization, and characterization of the facts marshaled in support of relator's claims in the disclosure statements. If defendant's selection of documents constitutes opinion work product, then the more subjective and analytical process of culling, organizing, and summarizing the factual information presented in relator's disclosure statement deserves the same level of protection. *Cf. Montrose Chemical Corp. of California v. Train,* 491 F.2d 63, 67–71 (D.C.Cir. 1974) (holding that summaries and analyses prepared by agency staff attorneys of evidence adduced at a hearing were exempt from disclosure under the Freedom of Information Act because the summaries revealed what facts the staff "cited, discarded, compared, evaluated, and analyzed to assist the Administrator in formulating his decision," how the staff "exercis[ed] their judgment as to what record evidence would be important to the Administrator in making his decision" and their "evaluation of the [facts'] relative significance," and therefore production of the documents would violate the privilege against disclosure of an agency decision-maker's mental processes).

Contrary to defendant's assertion, the statutory requirement that relators disclose "substantially all material evidence and information" does not mean that disclosure statements are "kitchen sink" documents that indiscriminately catalogue the universe of facts known to the relator (and which therefore could not possibly reveal opinions, theories, or mental impressions). The statute calls for disclosure of "substantially all" of the "material" facts and evidence in the relator's possession. To meet that obligation, the relator and his or her counsel must engage in a process of selecting and winnowing from the totality of information known to the relator only those facts and evidence that are material to the relator's legal claims. Therefore, the factual narratives in the disclosure statements reveal "the mental impressions, conclusions, opinions, or legal theories of" the relator and his or her counsel. *See* Fed. R.Civ.P. 26(b)(3). For these reasons, the court concludes that the disclosure statements prepared by relator and his counsel in this case (excluding pre-existing documents attached as exhibits thereto) constitute opinion work product.

Treating all portions of disclosure statements (except, of course, any exhibits thereto) as opinion work product makes sense for other reasons as well. One problem with

some cases holding that disclosure statements are work product is that they have classified disclosure statements as "ordinary" or "factual" work product, rather than as "opinion" work product, *see, e.g., Stone,* 144 F.R.D. at 401, or have reserved the classification issue for determination following *in camera* review. *See, e.g., Burroughs,* 167 F.R.D. at 684. Only opinion work product, of course, is almost invariably shielded from discovery because it enjoys nearly absolute protection. *See Holmgren,* 976 F.2d at 576–577 (indicating that "opinion work product may be discovered and admitted when mental impressions are *at issue* in a case and the need for the material is compelling.") (emphasis in original). Ordinary or factual work product, by contrast, is entitled to more limited, qualified protection. *See Burroughs,* 167 F.R.D. at 683–684; *Stone,* 144 F.R.D. at 401. This means that when relators are preparing disclosure statements, they cannot determine whether all or part of the disclosure statements ultimately will be turned over to the defendant, even if it is clear that some sort of work product protection is available. This is partly because where the line between opinion work product and ordinary work product should be drawn sometimes is debatable. Moreover, ordinary work product is subject to discovery if the defendant can show "substantial need" and an inability to obtain "the substantial equivalent" without "undue hardship". *See* Fed.R.Civ.P. 26(b)(3). Not only are these phrases vague and elastic, but a relator seldom will be able to predict with high degree of confidence whether the defendant will be able to meet that test months or even years after disclosure statements are prepared. Faced with this uncertainty about whether all or portions of disclosure statements ultimately may be revealed to the defendant, it would not be surprising if relators prepared disclosure statements containing the bare minimum necessary to encourage intervention and avoid dismissal, and certainly no analysis, synthesis, commentary, opinions, discussions of legal authorities, or the like.

On the other hand, classifying disclosure statements as opinion work product—which means they almost never will have to be turned over to the defendant—encourages relators to include everything that might help the government in evaluating the case, secure in the knowledge that whatever is written will not be seen by the defendant. It also spares the parties the burden and expense of litigating the discoverability of disclosure statements (or portions thereof), and eliminates the need for judicial *in camera* review of proposed redactions.[5] Classifying disclosure statements as opinion work product therefore furthers the purposes of section 3730(b)(2).

■ Defendant contends that production of the disclosure statement concerning the Medium Launch Vehicle III ("MLV III") should be compelled because relator used it to refresh his recollection before testifying at his deposition, even if the work product doctrine otherwise would protect that document from discovery.

Rule 612 of the Federal Rules of Evidence states that

if a witness uses a writing to refresh memory for the purpose of testifying, either— (1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.

Fed.R.Evid. 612. Rule 612 applies to deposition testimony. *See* Fed.R.Civ.P. 30(c) ("Examination and cross-examination of witnesses may proceed as permitted at the trial under the provisions of the Federal Rules of Evidence except Rules 103 and 615."); *Sporck,* 759 F.2d at 317 (stating that Rule 612 is applicable to deposition testimony); *see generally* William W Schwarzer, A. Wallace Tashima & James M. Wagstaffe, *Rutter Group Practice Guide: Federal Civil Procedure Before Trial* ¶ 11:54.1 (2002). "Rule 612 re-

---

**5.** Although a similar argument might be made about the optimal classification of work product as either "opinion" or "ordinary" in other con-

texts, the desirability of promoting the purposes the section 3730(b)(2) makes the argument more compelling in the False Claims Act context.

quires that a party meet three conditions before it may obtain documents used by a witness prior to testifying: 1) the witness must use the writing to refresh his memory; 2) the witness must use the writing for the purpose of testifying; and 3) the court must determine that production is necessary in the interests of justice." *Sporck,* 759 F.2d at 317.

Relator admitted that he reviewed the MLV III disclosure statement in preparation for his deposition, and he conceded that it refreshed his recollection regarding matters about which he testified. [*See* Defendant's Supplemental Memorandum at 3–5; Declaration of James E. Gauch in Support of Motion to Compel, Ex. A at 5 (excerpt of deposition testimony of Richard D. Bagley); Declaration of Richard D. Bagley in Opposition to Motion to Compel at 3]. Relator's use of that document to refresh his recollection prior to testifying during his deposition amounts to a limited waiver of work product protection, and production of the MLV III disclosure statement is warranted. *See United States v. Nobles,* 422 U.S. 225, 239 & n. 14, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975) (holding that where defense counsel proposed to call his investigator to impeach eyewitness testimony based on the investigator's interview reports, work product protection was waived as to those reports, and explaining that where "counsel attempts to make a testimonial use of these materials the normal rules of evidence come into play with respect to cross-examination and production of documents"); *Sperling v. City of Kennesaw Police Dep't,* 202 F.R.D. 325, 329 (N.D.Ga.2001)(holding that the plaintiff's use of a document during her deposition to refresh her memory waived work product protection as to that document and entitled the defendant to its production under Rule 612); *Nutramax Laboratories, Inc. v. Twin Laboratories Inc.,* 183 F.R.D. 458, 472 (D.Md.1998)(holding that the deponent's review of documents prior to his deposition to refresh his recollection "constituted a testimonial use of these documents" under Fed.R.Evid. 612, and "resulted in a limited, implied waiver of the attorney work product doctrine as to them").

Defendant also contends that although relator recalled reviewing only the MLV III disclosure statement in preparation for his deposition, "it is impossible to be sure" that he did not review others, and that relator's "counsel doubtless can represent whether [relator] reviewed any" others. [Defendant's Supplemental Memorandum at 4–5]. Because defendant has not satisfied the first two foundational elements required by Rule 612, *see Sporck,* 759 F.2d at 317, there is no basis for granting its request to compel production of any additional disclosure statements pursuant to Rule 612 of the Federal Rules of Evidence.

For the reasons explained above, defendant's motion to compel is **granted in part and denied in part.** The disclosure statements are opinion work product. Except as to (1) the MLV III disclosure statement, and (2) any disclosure statement (or portion thereof) already revealed to defendant, plaintiffs have not waived work product protection as to the disclosure statements, and defendant has not shown that rare or compelling circumstances exist that might justify abrogating the nearly absolute protection accorded opinion work product. *See Holmgren,* 976 F.2d at 577; *Burroughs,* 167 F.R.D. at 683–684. Plaintiffs must produce the MLV III disclosure statement. Defendant may retain and use any portions of any disclosure statement already revealed to it. To the extent that they have not already done so, plaintiffs must produce to defendant any attachments or exhibits to any of the disclosure statements which were not prepared by or for relator or his counsel in anticipation of this litigation or for the purpose of creating the disclosure statements. If an identical copy of an exhibit or attachment already has been produced to defendant, then plaintiffs obviously need not produce it again. Plaintiffs shall comply with this order within eleven (11) days.

**IT IS SO ORDERED.**