**CONNOLLY DATA SYSTEMS, INC., Plaintiff,**

**v.**

**VICTOR TECHNOLOGIES, INC., Defendant.**

**Misc. No. 86–493.**

United States District Court, S.D. California.

Feb. 17, 1987.

Madan and Madan by Steven R. Sortevik, Boston, Mass., for plaintiff.

Brown, Rudnick, Freed and Gesmer by Marilyn D. Stempler, Boston, Mass., for defendant.

BARRY TED MOSKOWITZ, United States Magistrate:

This case requires the court to decide whether, on the record before it, the predeposition communications between the defendant corporation's former employee and the defendant's attorney are discoverable. I conclude that the attorney-client privilege is inapplicable but that the communications of the defendant's attorney to the defendant's former employee are protected from disclosure under the attorney work-product immunity embodied in Federal Rule of Civil Procedure 26(b)(3).

## I

Connolly Data Systems, Inc., (Connolly) a New Hampshire corporation located in Lowell, Massachusetts, brought this action in the District Court for the District of Massachusetts against Victor Technologies, Inc., (Victor) a California corporation, located in Scotts Valley, California, engaged in the manufacture and sale of calculators, cash registers and computers. In October 1984, Victor entered into a distributorship agreement with Connolly for the marketing and distribution by Connolly of a desk-top computer manufactured by Victor. Tim May, Victor's General Manager of United States Field Operations, executed the agreement on behalf of Victor. In or about February 1985, Victor was acquired by another corporation. In March 1985, Tim May and Edward Hanson, Victor's Acting Treasurer, terminated their employment with Victor. Hanson had been in charge of Victor's credit and financial functions, including cash management, credit, collections of accounts receivable and financial reporting. During the period of Hanson's employ, Victor had been in reorganization under the bankruptcy laws. Hanson was responsible for settlement agreements with Victor's customers. He was also involved in a settlement negotiated with Connolly.

In May 1985, Connolly filed a complaint in the District Court for the District of Massachusetts, alleging premature termination of the distributorship agreement, breach of the agreement, unfair and deceptive practices and defamation. Victor answered and counterclaimed, alleging Connolly's breach of the distributorship agreement and breach of a negotiated settlement agreement.

In July 1986, counsel for Victor, Marilyn D. Stempler, telephoned Hanson who was residing in La Jolla, California. During the telephone conversation, Victor's counsel spoke with Hanson about Hanson's knowledge of the facts involved in the litigation. Victor's counsel also asked questions seeking information that would be useful in later preparing Hanson for a deposition.

Thereafter, counsel for Victor decided to take Hanson's deposition to preserve his testimony for trial. Hanson's deposition was noticed and scheduled for November 7, 1986, in San Diego, California.

Prior to the deposition, counsel for Victor had several other telephone conversations with Hanson relating to his recollection of relevant facts and the preparation of his deposition. There were no participants in these conversations other than Hanson and Victor's counsel. Victor's counsel also sent Hanson a set of documents relating to the dispute involved in the litigation. Victor has since made these materials available to Connolly. Counsel for Victor arrived in San Diego prior to Hanson's deposition and had meetings alone with him during which she prepared him for the deposition.

During the deposition on November 7, 1986, counsel for Connolly asked Hanson to relate what had been discussed during his conversations with Victor's counsel. Specifically, he asked Hanson to relate what Victor's counsel said to him and what he said to her. See TR 12. An objection was raised on the grounds of attorney-client privilege and the attorney work-product doctrine. Hanson refused to answer the questions. Connolly therefore moved before this court for an order under Federal Rules of Civil Procedure 37(a)(1) and (2), compelling Hanson to answer the questions. Victor has, in essence, cross moved for a protective order under Federal Rule of Civil Procedure 26(c), to protect against disclosure of allegedly privileged communications and disclosure of the mental impressions, conclusions, opinions or legal theories of Victor's counsel. Hanson's deposition was recessed and is to continue on February 24, 1987.

## II

### THE ATTORNEY–CLIENT PRIVILEGE

Victor contends that the communications between Hanson and its attorney are privileged and protected from discovery. These communications were in the nature of investigation and deposition preparation con-

ducted by Victor's attorney. At the time of these communications, Hanson was no longer an employee of Victor, having terminated his employment more than 16 months prior to the first telephone conversation. The issue before the court is whether the attorney-client privilege applies to communications between a former corporate employee and the corporation's attorney concerning pending litigation. There are cases dealing with the applicability of the attorney-client privilege to communications between present employees and corporate counsel. However, the question of whether the privilege extends to communications between a former employee and corporate counsel is a novel one.

## A.

■ Before deciding what the rule of privilege is in this context, the court must decide from which jurisdiction the applicable rules must be drawn. Rule 501 of the Federal Rules of Evidence provides in pertinent part:

> [T]he privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. *However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.* (Emphasis added.)

Since this diversity case involves claims and defenses under state law, federal common law does not apply.[1] While state law governs, the question here is whether the law of Massachusetts or California must be

used to resolve the issue. Federal district courts sitting in diversity cases apply the conflict of laws rules prevailing in the state in which they are situated. *Klaxon Co. v. Stentor Electric Mfg. Co., Inc.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). California utilizes the "governmental interest analysis" approach in determining which state's law to apply. *Fleury v. Harper & Row, Publishers, Inc.*, 698 F.2d 1022, 1025 (9th Cir.1983); *Strassberg v. New England Mutual Life, Ins. Co.*, 575 F.2d 1262 (9th Cir.1978); *Hurtado v. Superior Court*, 11 Cal.3d 574, 114 Cal.Rptr. 106, 522 P.2d 666 (1974); *Reich v. Purcell*, 67 Cal.2d 551, 63 Cal.Rptr. 31, 432 P.2d 727 (1967). This approach requires the court to examine the policy underlying the laws of the involved states to determine which states are more "interested" in having their laws applied to the issue in question. Specifically, the California Supreme Court in *Hurtado* noted that:

> [T]he forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event he must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it.

*Hurtado v. Superior Court*, 11 Cal.3d at 581, 114 Cal.Rptr. at 110, 522 P.2d at 670.

Here, Massachusetts has little or no interest in having its rule of attorney-client privilege applied to the facts in this case. The corporation asserting the privilege is a California corporation with its principal place of business in California. The state of domicile of the corporation asserting the attorney-client privilege is an important factor to consider in choosing the law that governs the scope of that privilege. *Super Tire Engineering Co. v. Bandag, Inc.*, 562 F.Supp. 439, 440 (E.D.Pa.1983), (holding

---

1. Had federal common law applied, the court may well be bound by the Ninth Circuit's holding in *In Re Coordinated Pretrial Proceedings*, 658 F.2d 1355, 1361, n. 7. (1981), where the court found that on the facts in that case, the attorney-client privilege applied to communications of both present and former employees

with corporate counsel concerning the corporation's pending litigation. *See Upjohn Co. v. United States*, 449 U.S. 383, 394, n. 3, 101 S.Ct. 677, 685, n. 3, 66 L.Ed.2d 584 (1981), noting, but not deciding applicability of privilege to communications between former employees and corporate counsel.

that attorney-client relationship arose in Iowa, the state of Bandag's corporate headquarters). Additionally, the substantive communications that are the subject of this dispute took place primarily in California.[2] When Hanson spoke to counsel for Victor, any expectation of confidentiality that he had would likely stem from the laws in the state in which he resided and from which he spoke.

Furthermore, Hanson's deposition testimony took place in San Diego, California, even though it is to be used in a proceeding in Massachusetts. Under such circumstances, federal courts have applied the privilege law of the forum where the deposition takes place. *Wright v. Jeep Corporation,* 547 F.Supp. 871, 875 (E.D.Mich. 1982).

Thus, under the "governmental interest analysis" approach, it appears that Massachusetts has no interest in applying its law of attorney-client privilege to communications between a lawyer and declarant who is a former employee of a California corporation. The fact that the underlying litigation is pending in Massachusetts is not controlling. The communications, and the participants thereto, took place and were located in California. Here, a "false conflict of laws" exists. California has a substantial interest in having its privilege law applied while Massachusetts has none. Therefore, the law of the interested state should be applied. *Hurtado v. Superior Court,* 11 Cal.3d at 580, 114 Cal.Rptr. at 109–110, 522 P.2d at 669–670.

In addition to applying the "governmental interest analysis" approach, California also has a conflict of laws rule which provides that when the parties intend the law of a certain state to govern a dispute, that intention is usually respected. *Developers Small Business Investment Corp. v.*

*Hoeckle,* 395 F.2d 80, 83 (9th Cir.1968); *Bernkrant v. Fowler,* 55 Cal.2d 588, 12 Cal.Rptr. 266, 360 P.2d 906 (1961). Here, the agreement between the parties that is the subject of their dispute provides that the agreement "shall be governed by the laws of the State of California." (Par. 12.4). The agreement further provides that so long as Victor is undergoing bankruptcy reorganization proceedings, all controversies, claims and disputes arising out of the agreement shall be decided in the United States Bankruptcy Court for the Northern District of California, and thereafter in either the state courts of California or the United States District Court for the Northern District of California. (Victor could, at its option, bring suit in another jurisdiction). (Par. 12.5). In the absence of countervailing public policy considerations, agreements of the parties as to the applicable law are enforced. *Lauritzen v. Larsen,* 345 U.S. 571, 588–89, 73 S.Ct. 921, 931–932, 97 L.Ed. 1254 (1953); *Telco Leasing, Inc. v. Transwestern Title Co.,* 630 F.2d 691, 693 (9th Cir.1980).[3]

The foregoing analysis of California conflict of laws rules leads to the conclusion in this case that the privilege law of California should be applied in ruling on objections made during a deposition taken in California for use in the District of Massachusetts. This result is consistent with the rule noted by several federal cases that a district court is usually bound by its own privilege law when compelling testimony in a deposition for use in another forum. *Palmer v. Fisher,* 228 F.2d 603 (7th Cir. 1955) *cert. denied,* 351 U.S. 965, 76 S.Ct. 1030, 100 L.Ed. 1485 (1956), *rev'd on other grounds,* 360 F.2d 868 (7th Cir.1966); *In re Westinghouse Electric Corp.,* 76 F.R.D. 47, 52 (W.D.Pa.1977); *Ex Parte Sparrow,*

---

**2.** The conversations between Victor's attorney and Hanson, during deposition preparation, took place in San Diego, California. The only other communication of any substance took place by telephone between Hanson in California and Victor's attorney in Massachusetts.

**3.** It is interesting to note, that even if the conflict of laws rules of Massachusetts were followed here, that state also has a rule that the parties' own choice of law is followed if reasonable. *Maxwell Shapiro Woolen Co. Inc. v. Amerotron Corp.,* 339 Mass. 252, 257, n. 1, 158 N.E.2d 875 (1959); *Steranko v. Inforex, Inc.,* 5 Mass. App.Ct. 253, 260, 362 N.E.2d 222 (1977), *appeal after remand,* 8 Mass.App. 523, 395 N.E.2d 1303 (1979).

14 F.R.D. 351 (D.Ala.1953); 23 Wright and Graham, Federal Practice and Procedure, § 5436 at 883–84. Therefore, California law must be applied in ruling on the applicability of the attorney-client privilege to the facts of this case.

### B.

Generally, communications between a lawyer and client which are intended to be confidential are protected from disclosure. California Evidence Code, § 954. Confidential communications include not only information given by a client to his or her attorney but also the attorney's legal opinion and advice given to the client. California Evidence Code § 952. The party claiming the attorney-client privilege as a bar to disclosure has the burden of showing that the communication sought to be suppressed falls within the parameters of the privilege. *Alpha Beta Co. v. Superior Court (Sundy)*, 157 Cal.App.3d 818, 825, 203 Cal.Rptr. 752, 755 (1984).

The narrow question here is whether the communications between a former employee of a corporation and the corporation's attorney are privileged under the facts of this case. The parties do not dispute that the communications between the former employee and corporate counsel were intended to be confidential. Neither party contends that any third party was present during the communications or that a waiver of the privilege in any other respect exists. The sole issue is whether, in this context, there were communications between a lawyer and a client.

California Evidence Code § 951 defines a *client* as a *person*. The term *person* is defined in the Evidence Code as including a legal or artificial person. California Evidence Code § 175. There is no doubt that a corporation can be the client for the purposes of the attorney-client privilege. *D.I. Chadbourne, Inc. v. Superior Court,* 60 Cal.2d 723, 36 Cal.Rptr. 468, 388 P.2d 700 (1964). Further, privileged communications between a client and an attorney may be either those made directly or through an authorized representative such as an agent

or employee. California Evidence Code § 951; Jefferson, Synopsis of California Evidence Law § 40.1 at 643 (1985). The applicability of the attorney-client privilege in the corporate context is complex because a corporation is not a natural person and can only speak through some natural person. *D.I. Chadbourne, Inc. v. Superior Court,* 60 Cal.2d at 732, 36 Cal.Rptr. 468, 388 P.2d 700. Thus, the corporate client can only communicate to its attorney through an "authorized representative."

The court has not found any reported cases considering the question of whether a former employee can constitute an "authorized representative" so that his or her communications with the corporation's attorney are privileged. The California Supreme Court's decision in *D.I. Chadbourne, Inc.,* however, provides basic principles to be applied in deciding whether the privilege applies to communications between present corporate employees and the corporation's attorney. Since these principles apply to communications of present employees, *a fortiori,* they should apply to communications of past employees.

The eleven principles set down in *D.I. Chadbourne, Inc.* are guides to determine whether "the natural person who speaks is speaking from the status of a [corporate] client (actual or prospective), or is merely a witness whose unprivileged communications someone else is seeking to suppress under a claim of privilege." 60 Cal.2d at 732, 36 Cal.Rptr. 468, 388 P.2d 700. Several of the *D.I. Chadbourne, Inc.,* principles are relevant here:

2. When such [the corporation's] employee is not a co-defendant (or person who may be charged with liability) his communication should not be so privileged unless, under all of the circumstances of the case, he is the natural person to be speaking for the corporation; that is to say, that the privilege will not attach in such case unless the communication constitutes information which emanates from the corporation (as distinct from the nonlitigant employee), and the communicating employee is such a

person who would ordinarily be utilized for communication to the corporation's attorney;

3. When an employee has been a witness to matters which require communication to the corporate employer's attorney, and the employee has no connection with those matters other than as a witness, he is an independent witness; and the fact that the employer requires him to make a statement for transmittal to the latter's attorney does not alter his status or make his statement subject to the attorney-client privilege;

. . . .

11. [N]o greater liberality should be applied to the facts which determine privilege in the case of a corporation than would be applied in the case of a natural person (or association of persons), except as may be necessary to allow the corporation to speak.

Additionally, *D.I. Chadbourne, Inc.*, principle No. 4 provides that where the employee is *required* to make the communications to the attorney because the matter on which he speaks stems from his employee responsibilities, then the communication is of the corporate employer and is privileged. *D.I. Chadbourne, Inc.*, 60 Cal.2d at 737–738, 36 Cal.Rptr. 468, 388 P.2d 700.

■ Applying these principles to the facts of this case leads to the conclusion that Hanson's communications to Victor's attorney are not protected from disclosure as communications by Victor Technologies, Inc., to its attorney. Hanson is not the natural person to speak for the corporation. He is no longer employed by the corporation and his words and acts are no longer binding on Victor. Thus, under *D.I. Chadbourne, Inc.*, principle No. 2, Hanson cannot presently be considered "such a person who would ordinarily be utilized for communication to the corporation's attorney." Furthermore, although the facts indicate that, as an employee, Hanson at one time had some connection to the transaction which is the subject of the litigation, nothing in the record indicates that Hanson is required to speak to Victor's attorney.

Hanson was not the person who executed the distributorship agreement for Victor. The record does not establish that he was the only person who had knowledge of these matters. Victor has presented no facts which establish that it could legally require, or even did require, Hanson to speak to its attorney about the facts in dispute. Nor does the record establish that Hanson is the only one who has relevant knowledge of the settlement agreement. Thus, *D.I. Chadbourne, Inc.*, principle No. 4 does not apply here.

It was Victor's burden to establish the existence of the privilege. *Alpha Beta Co. v. Superior Court (Sundy)*, 157 Cal. App.3d 818, 203 Cal.Rptr. 752. It has not established that Hanson was anything more than a witness to the matter that is involved in this litigation. Thus, *D.I. Chadbourne, Inc.*, principle No. 3 would apply, and the communication would not be privileged.

Finally, *D.I. Chadbourne, Inc.*, principle No. 11 makes clear that the corporation should not have a greater privilege than a natural person, except as is necessary to allow the corporation to speak. Here, Victor Technologies, Inc., can speak without Hanson. Essentially, Hanson may have a better recollection of events than those presently in Victor's employ. Nevertheless, a natural person litigant cannot ask a witness who better remembers the events involved to speak to his or her attorney and then claim the conversation is protected from disclosure. To include Hanson's communication within the privilege would give the corporation an advantage over a natural person. *D.I. Chadbourne, Inc.*, principle No. 11 counsels against such an extension of the attorney-client privilege.

Victor has not carried its burden of establishing that the communications between Hanson and its attorney are privileged as analyzed against the aforementioned principles expressed in *D.I. Chadbourne, Inc.* Additionally, an analysis of Section 951 of the California Evidence Code leads to the same conclusion. That section provides that privileged communications

between an attorney and a client may be either those made directly or by means of an *authorized representative.* Here, Victor has not established that Hanson was an *authorized representative* of the corporation when he spoke to its attorney. It appears from Section 951 and the principles in *D.I. Chadbourne, Inc.*, that only communications to and from authorized representatives, that is agents or employees, of corporations would be privileged. For these reasons, the court holds that the subject communications between the attorney for Victor and Hanson, are not protected from disclosure under the attorney-client privilege.

## III

### ATTORNEY WORK–PRODUCT DOCTRINE

Victor, nevertheless, claims that these communications are protected from disclosure under the attorney work-product doctrine. Since this doctrine involves a procedural consideration and not application of a substantive privilege, we look to federal, not state law, to resolve this issue.[4] *Railroad Salvage v. Japan Freight Consolidators*, 97 F.R.D. 37, 40 (E.D.N.Y. 1983); *Roberts v. Carrier Corp.*, 107 F.R.D. 678, 685, n. 2 (N.D.Ind.1985).

The work-product doctrine is embodied in Rule 26(b)(3) of the Federal Rules of Civil Procedure. Rule 26(b)(3) provides that under certain circumstances, discovery may be had of documents and things prepared in anticipation of litigation or trial by an attorney. However, the Rule also provides that:

> In ordering discovery of such materials [trial preparation materials] when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Thus, while trial preparation materials may be discoverable upon an appropriate showing, the materials containing the mental impressions, conclusions, opinions and legal theories of an attorney are discoverable only in rare and extraordinary circumstances. *In Re Doe*, 662 F.2d 1073 (4th Cir.1981) (holding discovery of opinion work product only in extraordinary circumstances, one of which may be fraud); *In Re Murphy*, 560 F.2d 326, 336 (8th Cir.1977) ("Opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances"); *Handgards, Inc. v. Johnson and Johnson*, 413 F.Supp. 926 (N.D.Cal.1976). *See, Upjohn Company v. United States*, 449 U.S. 383, 400, 101 S.Ct. 677, 688, 66 L.Ed.2d 584, 598 (1981) (noting but not deciding whether immunity from disclosure is absolute or qualified).

The Supreme Court in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), noted the importance of protecting the thought processes of lawyers:

> Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

---

4. The protection from disclosure of attorney work-product has been classified as a procedural immunity, rather than a privilege, subject to the requirement of Federal Rule of Evidence 501, that state law governs in diversity cases. *Railroad Salvage v. Japan Freight Consolidators,* 97 F.R.D. 37 (E.D.N.Y. 1983). In any event, the California rule, California Code of Civil Procedure, Sections 2016(b) and (g), is similar to the federal rule and its application would not lead to a different result in this case.

329 U.S. at 510–511, 67 S.Ct. at 393, 91 L.Ed at 462. While on its face, Rule 26(b)(3) appears to apply only where "documents and things" are sought, such a construction is contrary to the general policy against invading the privacy of an attorney's preparation of litigation as noted in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385. Thus, the courts have rejected an interpretation of Rule 26(b)(3) that provides protection only for an attorney's mental impressions that are contained in "documents and tangible things." *Ford v. Philips Electronics Instruments Co.,* 82 F.R.D. 359, 360 (E.D.Pa.1979); *Phoenix Nat. Corp. v. Bowater United Kingdom Paper Ltd.,* 98 F.R.D. 669 (N.D.Ga.1983); *International Business Machines Corp. v. Edelstein,* 526 F.2d 37, 41 (2nd Cir.1975) (comments and questions of IBM's counsel in witness interview deemed "work product."); *United States v. I.B.M. Corp.,* 79 F.R.D. 378, 379–80 (S.D.N.Y.1978). These decisions make clear that a party cannot discover what an attorney said to a witness in interviewing him or in preparation for his deposition because such statements are likely to reveal the attorney's mental impressions, opinions and theories of the case.

In *Ford v. Philips Electronics Instruments Co.,* 82 F.R.D. 359, defendant's counsel deposed a nonparty witness. During the deposition, defendant's counsel questioned the deponent concerning discussions between the deponent and the plaintiff's attorney that had occurred the morning of the deposition. In sustaining an objection to the inquiry into what was discussed between the deponent and plaintiff's counsel, the court said that:

> Insofar as defendant's question attempted to elicit from the witness the specific questions that plaintiff's counsel posed to him, or even the area of the case to which he directed the majority of his questions, it exceeds the permissible bounds of discovery and begins to infringe on plaintiff's counsel's evaluation of the case. However, insofar as it was directed to the substance of the witness' knowledge of relevant facts, it is clearly an acceptable line of inquiry.

82 F.R.D. at 360. Similarly, in *Phoenix Nat. Corp. v. Bowater United Kingdom Paper,* 98 F.R.D. 669, the court held that Rule 26(b)(3) prevented questioning of a deponent as to what another party's attorney had told the witness, and whether the attorney had talked to the witness about a particular set of documents. 98 F.R.D. at 671.

Here, counsel for Connolly sought to question Hanson as to what was discussed between Hanson and Victor's attorney. Insofar as this inquiry sought to discover what Victor's attorney said to Hanson or what Victor's attorney asked Hanson, the answers may tend to divulge the mental impressions, opinions and theories of Victor's attorney. However, if the inquiry was limited so that it only sought to discover what Hanson knew about the facts involved or what he said to Victor's attorney about the facts of the case, the questions were proper. *United States v. I.B.M. Corp.,* 79 F.R.D. at 380. Thus, the questions asked in this case were too broad and the objection must be sustained.

Since the deposition is to continue, the court establishes the following guidelines for further inquiry into the discussions between Hanson and Victor's attorney. Plaintiff's counsel may inquire into the substance of Hanson's knowledge concerning matters relevant to the subject matter of the litigation. However, plaintiff's counsel may not ask questions that tend to elicit the questions posed to Hanson by Victor's attorney, the general line of inquiry pursued by her, the facts to which Victor's attorney appeared to attach significance or any other matter that reveals Victor's attorney's mental impressions, theories, conclusions or opinions concerning the case. *Ford v. Philips Electronics Instruments Co.,* 82 F.R.D. 359.

For the reasons set forth above, the motion of the plaintiff to compel answers to deposition questions and the defendant's motion for a protective order are granted in part and denied in part. The plaintiff may continue the deposition consistent with the

above opinion of the court. Neither party shall be taxed costs.

IT IS SO ORDERED.