**KINTERA, INC., Plaintiff,**

v.

**CONVIO, INC., Defendant.**

No. CIV.02CV0264–BTM (LSP).

United States District Court,
S.D. California.

Nov. 14, 2003.

Robert N. Phillips, Howrey, Simon, Arnold and White, Menlo Park, CA, for Plaintiff.

David E. Kleinfeld, Chad R. Fuller, Heller, Ehrman, White and McAuliffe, San Diego, CA, for Defendant.

## AMENDED ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO COMPEL AND DENYING PLAINTIFF'S MOTION TO COMPEL

PAPAS, United States Magistrate Judge.

Defendant, Convio, Inc. (Convio) filed a motion to compel witness statements and internal email communications that were created by Plaintiff, Kintera, Inc. (Kintera). Kintera then filed a cross-motion to compel discovery of a document that was inadvertently produced by Defendant. For good cause appearing and for the reasons set forth below, the Court GRANTS in part and DENIES in part Convio's motion to compel and DENIES Kintera's motion to compel.

## INTRODUCTION

Kintera and Convio are competitors. Their clientele are nonprofit organizations, for whom they provide Internet-based marketing and fund-raising services. On February 11, 2002, Kintera filed its original complaint alleging copyright infringement and misappropriation of trade secrets by Convio. Kintera's complaint alleges that without Kintera's authorization, Convio obtained a Demonstration CD–ROM which contained Kintera's proprietary, confidential, copyrighted computer program codes, and that Convio copied Kintera's codes and used them to develop its own website generator for third parties. Kintera asserts causes of action for unfair competition, intentional interference with prospective economic advantage, copyright infringement and trespass of Kintera's password-protected URL, through Convio's alleged unauthorized access.

The parties have each filed motions seeking to compel the production of documents. Kintera seeks to compel discovery of a document that was inadvertently produced and later returned to Convio. Convio claims the document is protected from discovery by the attorney-client privilege.

Convio seeks to compel discovery of documents in Kintera's possession: witness affidavits, tape recorded conversations with the witnesses, and email communications regarding the witness's statements. Kintera claims the documents are protected from discovery by the work product doctrine. Convio also seeks to compel production of email communications between employees of Kintera.

Briefs were filed in support of and in opposition to both parties' Motions to Compel. On July 14, 2003, a hearing was held before Magistrate Judge Leo S. Papas. In attendance were Buckmaster de Wolf, Esq. and Robert Taylor, Esq. on behalf of Kintera, and Chad Fuller, Esq. and David Kleinfeld, Esq. on behalf of Convio. The Court made a preliminary ruling and requested the parties submit supplemental briefs. On August 12, 2003, a second hearing was held. In attendance were Mr. de Wolf, Mr. Fuller, and Mr. Kleinfeld. The Court has reviewed the parties' briefs and supporting exhibits, and considered the oral arguments presented by counsel during the hearings.

## LEGAL STANDARDS

### Work–Product Protection

 The work-product doctrine is a qualified immunity which protects from discovery documents and tangible things prepared by a party or that party's representative in anticipation of litigation. Fed. R.Civ.P. 26(b)(3). The party claiming the work-product privilege bears the burden of establishing that documents claimed as work product were prepared in anticipation of litigation. *See United States v. 22,80 Acres of Land,* 107 F.R.D. 20, 22 (N.D.Cal.1985). Rule 26(b)(3) provides for protection of both "fact" work product and "opinion" work product.

### Fact Work–Product

 Fact work product consists of factual material that is prepared in anticipation of litigation or trial. In determining whether documents were prepared in anticipation of litigation, the court should consider whether the documents "would not have been generated but for the pendency or imminence of litigation." *Griffith v. Davis,* 161 F.R.D. 687, 698–99 (C.D.Cal.1995), *quoting Kelly v. City of San Jose,* 114 F.R.D. 653, 659 (N.D.Cal. 1987).

### Opinion Work–Product

 Where the selection, organization, and characterization of facts reveals the theories, opinions, or mental impressions of a party or the party's representative, that material qualifies as opinion work product. *United States ex rel. Bagley v. TRW, Inc.,* 212 F.R.D. 554 (C.D.Cal.2003). In ordering discovery of such materials, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. Fed. R.Civ.P. 26(b)(3).

 Opinion work product receives "nearly absolute protection." *Id.* Therefore, materials containing mental impressions, conclusions, opinions, and legal theories of an attorney are discoverable only in rare and extraordinary circumstances. *United States ex rel. Burroughs v. DeNardi Corp.,* 167 F.R.D. 680 (S.D.Cal.1996); *Connolly Data Systems v. Victor Technologies,* 114 F.R.D. 89 (S.D.Cal.1987). Opinion work product includes such items as an attorney's legal strategy, intended lines of proof, evaluation of the strengths and weaknesses of the case, and the inferences drawn from interviews of witnesses. *Id.* at 96; *Bagley,* 212 F.R.D. at 563. In *Connolly Data Systems,* the Court held that under F.R.C.P. 26(b)(3), opposing counsel could not attempt to elicit "the facts to which [the defendant's] attorney appeared to attach significance or any other matter that reveals [the defendant's] attorney's mental impressions, theories, conclusions or opinions concerning the case." *Connolly,* 114 F.R.D. at 96.

*Exception to Work–Product Protection*

■ Even when documents are prepared by a party or party representative in anticipation of litigation they may be discoverable upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Fed.R.Civ.P. 26(b)(3).

*Waiver of Work–Product Protection*

■ Because one of the primary functions of the work product doctrine is to prevent a current or potential adversary in litigation from gaining access to the fruits of counsel's investigative and analytical effort and strategies for developing and presenting client's case, an analysis of issues of waiver of work product protection must focus on whether disclosures increased the likelihood that a current or potential opponent in litigation would gain access to the disputed documents. *Durkin v. Shields,* 167 F.R.D. 447, 454 (S.D.Cal.1995).

*Attorney–Client Privilege*

■ The purpose of the attorney-client privilege is to encourage candid communications between client and counsel. *See Upjohn Co. v. United States,* 449 U.S. 383, 390–91, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). The attorney-client privilege attaches to "(1) communications (2) made in confidence (3) by the client (4) in the course of seeking legal advice (5) from a lawyer in his capacity as such, and applies only (6) when invoked by the client and (7) not waived." *United States v. Abrahams,* 905 F.2d 1276, 1283 (9th Cir. 1990), overruled in part on other grounds by *United States v. Jose,* 131 F.3d 1325, 1329 (9th Cir.1997).

■ The Supreme Court has explained, "[t]he lawyer-client privilege rests on the need for the advocate and counselor to know all that relates to the client's reason for seeking representation if the professional mission is to be carried out." *Trammel v. United States,* 445 U.S. 40, 51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980). The privilege protects the giving of professional advice by the lawyer and the giving of information to the lawyer to enable him to give sound and informed advice. *See Id.*

## DISCUSSION

*Kintera's Motion To Compel Production of the TeamRaiser Document*

■ Kintera moves to compel production of a document bearing bates numbers CON-VIO_03_01835–37 (hereafter the "TeamRaiser document"). Kintera argues the TeamRaiser document is discoverable because it contains admissions about changes Convio allegedly made to the design of its product after improperly viewing Kintera's confidential information.

Convio originally produced the TeamRaiser document to Kintera on April 21, 2003. The TeamRaiser document apparently refers to other documents that are part of Convio's files. After receiving the document, Kintera contacted Convio to confirm all of the other documents identified in the TeamRaiser document had been produced. Convio then notified Kintera that the TeamRaiser document was an attorney-client privileged communication that had been inadvertently produced. Kintera returned the document and, at the same time, served Convio with discovery requests, including requests for admission, requests for production of documents, and interrogatories.

Kintera seeks production of the TeamRaiser document contending it is not protected by the attorney-client privilege because the document contains only factual information, and there is no indication that the document was created for the purpose of communicating with counsel 'regarding legal advice. Kintera also alleges the document was a pre-existing document that was prepared in the ordinary course of business and was only sent to counsel after he requested information regarding the product. Therefore, Kintera contends, the TeamRaiser document is not privileged.

Convio argues that the TeamRaiser document is protected by the attorney-client privilege, because it was created by the client for counsel, at counsel's request, and even if the

document is a factual communication, the contents of the document are nevertheless protected because it was created by the client to assist the attorney in preparation for litigation.[1]

On July 14, 2003, the Court indicated it was unable to determine whether the TeamRaiser document was an attorney-client privileged communication and allowed Convio the opportunity to submit additional evidence in support of its privilege claim. In response, Convio submitted declarations by Convio's counsel, Chad Fuller, and employee David Hart. Mr. Fuller's declaration stated that the TeamRaiser document was created by Mr. Hart, at Mr. Fuller's request, in order for him to give Convio legal advice regarding this case. The document was not prepared in the ordinary course of business, but created specifically for him to evaluate Kintera's claims. Mr. Hart's declaration reflected essentially the same information.

After reviewing Convio's supplemental declarations, this Court is satisfied the TeamRaiser document is a communication that was made in the course of seeking legal advice from counsel. The document meets all other requirements of attorney-client privilege. It is a communication, made in confidence, by the client. The privilege was invoked by the client and has not been waived.[2] Therefore, it is protected from discovery by the attorney-client privilege. Kintera may not refer to or rely on information obtained solely from the TeamRaiser document.

Due to Convio's earlier inadvertent production of the TeamRaiser document, Kintera had ample time to become familiar with its contents before returning it to Convio. Convio alleges Kintera seeks further discovery based on the contents of the privileged document, and requests the Court strike those discovery requests. The Court has not reviewed the document or the discovery requests and, therefore, cannot address the merits of Convio's argument at this time. Therefore, this Court orders the TeamRaiser

document and the discovery requests in question be produced for *in camera* review so the Court can make a ruling on this issue.

*Convio's Motion To Compel Discovery of Witness Statements and Related Documents*

Before Kintera filed its original complaint, Kintera communicated with two former employees of Convio regarding Convio's alleged improper conduct. As a result of those communications, Kintera possesses signed witness statements from and recorded conversations with two former Convio employees, Mr. Anderson and Ms. Tomich. The statements are referenced in Kintera's privilege log as documents 121 and 122, which describes each as a "signed witness statement." Documents 10, 14, 16, 17, 26, 28, 82, 83, and 87–109 are referenced in Kintera's privilege log as email exchanges regarding the witness statements and conversations between Kintera and Mr. Anderson and Ms. Tomich. Documents 112 and 113 are referenced in Kintera's privilege log as recorded conversations between Kintera and Mr. Anderson and Ms. Tomich. Kintera asserts the work product privilege for each of these documents. Kintera additionally confirmed possession of the signed witness statements on its website.

Convio seeks production of the signed witness statements, the recorded conversations with the witnesses, and the additional documents containing communications with or about the witnesses. Convio first argues that the signed witness statements are not protected as work product, and that even if they were originally protected, Kintera has waived protection of them and the other documents through disclosure. Convio alternatively argues that they have substantial need of all of the documents.

*Work Product Protection of the Signed Witness Statements*

Kintera argues the signed witness statements are protected under the work product doctrine because they were created in anticipation of litigation. Kintera states

---

1. Convio specifically disclaims any work-product privilege for this document.

2. Convio's initial inadvertent disclosure did not waive the privilege pursuant to the parties' stipulated protective order. Also, Kintera does not argue the privilege was waived.

the witness statements were obtained after discussions with the witnesses of potential improper conduct by Convio, in an effort to determine whether to bring suit.

Convio argues that the witness statements do not contain any mental impressions of Kintera's counsel and therefore are not protected by the work product doctrine. Convio confuses fact work product with opinion work product. Fact work product is protected if the documents were prepared in anticipation of litigation. Fed.R.Civ.P. 26(b)(3). In determining whether documents were prepared in anticipation of litigation, the court should consider whether the documents "would not have been generated but for the pendency or imminence of litigation." *Griffith*, 161 F.R.D. at 698–99. Kintera obtained the witness statements in an effort to determine whether to bring suit. Therefore, the witness statements "would not have been generated but for the pendency or imminence of litigation," and are accordingly protected as fact work product, regardless of whether they contain mental impressions of counsel. Kintera has met its burden of establishing that the witness statements are protected work product.

### Substantial Need of the Documents

■ Even when documents are prepared by a party or party representative in anticipation of litigation they may be discoverable upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Fed.R.Civ.P. 26(b)(3).

Convio argues it has a substantial need for the witness statements and recorded conversations, for purposes of cross examination and impeachment. Convio argues that because the witnesses are not within this Court's jurisdiction for purposes of a trial subpoena, they may be "unavailable" for trial testimony and, therefore, their deposition testimony may be admitted into evidence. Thus, Convio asserts, during the witnesses' depositions Convio's counsel would be "forced to elicit what will constitute trial testimony without being able to corroborate,

impeach or cross-examine the witnesses using their sworn statements."

Convio has not met its burden of showing substantial need. Convio can depose the witnesses. At this time, there is no evidence to indicate any statements Convio obtains during depositions would differ from the witness statements Kintera possesses. The mere possibility that these statements may have some impeachment value does not create a substantial need for their production. Based on the foregoing, the Court finds the statements are not discoverable under this analysis.

Convio alternatively argues work product protection for the statements was waived. Whether a waiver of the witnesses' statements occurred is set forth in the analysis below.

### Waiver of Work Product Protection

Convio argues Kintera waived work product protection of the witness statements and related documents through disclosure. One of primary functions of the work product doctrine is to prevent a current or potential adversary in litigation from gaining access to fruits of counsel's investigative and analytical effort, and strategies for developing and presenting the client's case. Therefore, an analysis of an alleged waiver of work product protection by virtue of a party's disclosure, must focus on whether the disclosure at issue substantially increased the likelihood that a current or potentially adverse party would **gain access to disputed documents**. *Durkin*, 167 F.R.D. at 447 (emphasis added).

In this case, Plaintiff made the following statements on its website, which can be accessed by members of the Internet using public:

> Kintera was alerted by Convio employees that Kintera's software source codes were being copied and used by Convio to sell products to nonprofit organizations.
>
> . . .
>
> **Kintera has been informed by Convio employees that,** in spite of their objections, Convio allegedly directed its employees to use Kintera's trade secrets for various purposes, including developing

software and interactive web sites for third parties, and other derivative works in the nonprofit sector. **Employees of Convio signed written affidavits under penalty of perjury.** (Exhibit B to Decl. Of Mr. Fuller) (emphasis added)

Convio argues this disclosure was sufficient to waive work product protection for the witness statements and all related documents. The information was disclosed on Kintera's publicly accessible website, where a potential adversary could (and did) view it. The question the Court must consider, therefore, is whether the statements on Kintera's website were sufficient to waive work product protection for the challenged documents.

*Witness Affidavits*

 Convio argues that because Kintera disclosed the substance of the underlying facts contained in the communications to counsel, the work product protection has been waived. Courts have found such a disclosure in the attorney-client privilege context serves to waive the privilege. *See Robinson v. Tex. Auto. Dealers Assn.*, 214 F.R.D. 432 (E.D.Tex.2003).

*Robinson* is a class action antitrust case that alleged car dealers fixed prices. Plaintiffs moved to compel production of a letter containing legal advice, from Defendants' attorney to Defendants. In the letter, the attorney analyzed an opinion that was provided by the Texas Consumer Credit Commissioner, and was relied upon by Defendants. Plaintiffs argued that because Defendants claimed they relied on the Commissioner's opinion as a legal defense in the action, and because the opinion was contained in the letter, Defendants had waived the attorney client privilege for the letter. The Court, distinguishing between "facts" and "communications" in the attorney client privilege context, disagreed.

The court acknowledged that the Commissioner's opinion was a "fact" as opposed to an attorney client communication, and recognized that a letter communicating that fact could be privileged, notwithstanding a waiver. *Id.* at 448. The *Robinson* court distinguished between disclosure of facts and disclosure of communications about facts in the context of waiver explaining,

Mere disclosure of the underlying fact would not waive the privilege or protection as to a communication containing that fact. See *El Paso*, 682 F.2d at 538 n. 10 (disclosure to a third party of the facts contained in a privileged communication does not affect the privileged nature of the communication). But **revealing that a communication contained that fact discloses the substance of the communication and, thus, waives the privilege (or the work-product protection, if disclosed to an adversary) as to that communication.** *Id.* at 448. (emphasis added)

Therefore, the court found that Defendants had waived the privilege as to the entire letter, not because they asserted as a defense that they relied on the Commissioner's opinion, but because they substantiated the defense by telling opposing counsel and the court that the opinion was communicated in the letter. *Id.* at 449.

Courts in the Ninth Circuit have similarly found that when substantive portions of attorney-client privileged communications are disclosed, the privilege is waived. *See Electro Scientific Indus. v. Gen. Scanning, Inc.*, 175 F.R.D. 539 (N.D.Cal.1997). *Electro Scientific* is a patent infringement case, in which the defendant asserted attorney-client privilege with respect to a letter from its attorney. Defendant issued a "News Release" in which it disclosed it had been advised by counsel that the Plaintiff's patents were invalid. The *Electro Scientific* court held the news releases served to waive Defendant's privilege, reasoning the news release voluntarily disclosed an important and substantive part of what would have otherwise been a confidential communication from counsel. *Id.* at 543. The court elaborated:

I know of no precedents that hold that all of a communication between attorney and client must be disclosed before a waiver occurs, and it makes no sense to hold that no waiver occurs when what is disclosed is the **most important part** of the privileged communication, but not the details. A sophisticated, well-counseled party who intentionally discloses an **important part** of an otherwise privileged communication

acts in a manner that is thoroughly inconsistent with preserving the confidentiality of that communication, Stated somewhat differently, a sophisticated party who intentionally discloses **the most significant part** of an otherwise privileged communication, in an act calculated to advance that party's commercial interests, cannot establish, as the law would require, that the party reasonably believed that it would be able to preserve the confidentiality of the other parts of that communication. For these reasons, I hold that the "News Release" effected a waiver of attorney-client privilege. *Id.* at 543. (emphasis added)

Courts have applied this reasoning to other privilege claims, including work product and deliberative process claims. *See Krenning v. Hunter Health Clinic,* 166 F.R.D. 33 (D.Kan. 1996); *See also Brown v. City of Detroit,* 259 F.Supp.2d 611 (E.D.Mich.2003). In *Krenning,* the court found a party's voluntary disclosure of portions of a privileged document in a press release and newspaper article served to waive attorney client and work product privileges, stating "[a] party can't selectively chose which portions of a document to release to the public and which portions it wishes to assert a privilege." *Krenning,* 166 F.R.D. at 35.

In *Brown,* a police officer brought a civil rights action against the city. The plaintiff sought discovery of a review board report, portions of which had been intentionally leaked to the media. The court found the deliberative process privilege was waived by the defendants' intentional disclosure of portions of the report, reasoning:

> Defendants seemingly engaged in self-serving leaks of **select portions of the executive board's work product, while sharply limiting access to the full substance of the board's report.**
>
> . . .
>
> This is hardly a compelling set of circumstances upon which to rest a claim of privilege. To the contrary, **it is precisely under such conditions that privileges are deemed to be waived.** *Id.* at 623. (emphasis added)

The policy reasons behind courts holding a selective waiver of attorney-client privilege

information serves as a complete waiver also applies to the work product doctrine. *See In re Columbia/HCA Healthcare Corp. Billing Practices Litigation,* 293 F.3d 289 (6th Cir. 2002). "Even more than attorney-client privilege waiver, waiver of the protections afforded by the work product doctrine is a tactical litigation decision. Attorney and client both know the material in question was prepared in anticipation of litigation; the subsequent decision on whether or not to 'show your hand' is quintessential litigation strategy. Like attorney-client privilege, there is no reason to transform the work product doctrine into another 'brush on the attorney's palette,' used as a sword rather than a shield." *Id.* at 306–07.

The policy reasons for not using the work product protection as a sword and as a shield were also articulated in *Verizon California Inc. v. Ronald A. Katz Tech. Licensing, L.P.,* 266 F.Supp.2d 1144 (C.D.Cal.2003), stating, "the attorney-client privilege and work product immunity 'may not be used both as a sword and a shield. Where a party raises a claim which in fairness requires disclosure of the protected communication, [these protections] may be implicitly waived.'" (Quoting *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.,* 259 F.3d 1186, 1196 (9th Cir.2001)). It is a fairness issue that Kintera should not be allowed to shield their work product from discovery but at the same time use it as a "sword" by touting the essence of the work product on their website. Kintera made the decision to give up its shield for a sword in deciding to pursue this course of litigation strategy.

In the present case, Kintera did not merely relay facts to a third party, but disclosed particular facts *and that they were contained in specific communications they later asserted as being privileged.* This constitutes a waiver of the protection for the specific communications referenced. Because the affidavits were specifically mentioned in this context, it is implicit that some of the information disclosed is contained within them. Kintera specifically references the work product communications with counsel, the "signed written affidavits." This specific reference to the documents later asserted to be

privileged, combined with the specific nature of the disclosure, amounts to a waiver of protection from discovery,

The disclosure is notably specific in nature. On its website Kintera states Convio's employees reported: "*software source codes* were being *copied and used* by Convio to *sell products* to nonprofit organizations," and Convio "*directed its employees* to use Kintera's trade secrets for various purposes, including *developing software and interactive web sites for third parties,* and other derivative works in the nonprofit sector." (emphasis added).

It is reasonable to apply this type of analysis to work product protected documents as well. It is apparent that "important" and "significant" portions of the witness affidavits were disclosed on Kintera's website. In keeping with the *Electro Scientific* court's rationale, it would be inconsistent to find Kintera's document maintained privileged status after such a disclosure of significant portions of the document. A party cannot reasonably expect to preserve confidentiality of work product while simultaneously disclosing substantive components of that document. .

The *Electro Scientific* court's decision also appears to be based on the party affecting the disclosure being a "sophisticated, well-counseled party" who *intentionally* disclosed the information "in an act calculated to advance that party's commercial interests." Again, this is the very situation before this Court. Kintera is a sophisticated corporation, represented by experienced counsel, the disclosure was obviously intentional, and given the context of the disclosure (posted on Kintera's website for clients and potential clients' perusal), the disclosure was clearly motivated by commercial concerns.

*Recorded Conversations With Witnesses and Emails Regarding the Witnesses' Statements*

■ Convio argues that Kintera's waiver for the witness affidavits extends to all related documents that contain the same information. This Court does not agree. Because Kintera's disclosure specifically referenced the affidavits and no other documents, only the privilege for the affidavits is waived. Had the disclosure not mentioned any specif-

ic document whatsoever, the reader of the statement would have no reason to believe any protected documents existed. It is because of Kintera's explicit reference to the "signed written affidavits" that the waiver is affected as to those documents. Accordingly, the recorded conversations and emails retain their privileged status. This Court DENIES Convio's Motion to Compel Production of the Recorded Conversations With Witnesses and Emails Regarding the Witnesses' Statements.

*Availability of Protected Witness Statements*

■ The parties have represented that Convio intends to depose Mr. Anderson and Ms. Tomich. Court foresees the possibility that the witnesses may need to refer to their prior statements during their depositions in order to refresh their recollection as to a particular fact or point. Kintera has represented it intends to have counsel attend the depositions as an interested party. Therefore, the Court directs Kintera's counsel to make copies of any prior statements provided by these individuals that are in Kintera's possession, available at the depositions in the event they need to be relied upon or referred to by the witnesses.

*Convio's Motion To Compel Discovery of Communications Between Kintera's Employees*

This set of documents is a series of emails between non-attorney employees. These documents are referenced in Kintera's privilege log as documents 36, 41, 65, and 70–78. These emails are referred to as the "McNeill documents." Kintera states the emails were written by Mr. McNeill, an employee of Kintera (Vice Pres. of Sales), to other employees. None of the employees are licensed attorneys. Kintera asserts attorney client privilege and opinion work product privilege for each of these documents. Convio argues the senders and recipients of these emails are third parties, and therefore, the emails are not privileged. Kintera counters, contending the communications were written at the direction of counsel, in order to assist counsel in litigation, and reflect legal advice. Kint-

era argues that because only employees on a need-to-know basis were parties to the emails, the communications are protected by attorney-client and work product privileges.

Kintera's in-house counsel, Mr. Rahman, states in his declaration that the emails were created at his direction in anticipation of this litigation. Mr. Rahman explains he did not speak directly with Mr. McNeill about the emails, but spoke with Mr. Gruber (Kintera's Vice Pres.), who spoke with Mr. McNeill on Mr. Rahman's behalf. Then, according to Mr. Rahman's declaration, "McNeill contacted the Kintera sales force, and then in these e-mails, forwarded information he obtained from the sales force to Denise Clancy, who was at the time Mr. McNeill's secretary, and Mr. Gruber." (Rahman Decl. Para. 6) Kintera argues the McNeill documents are protected from discovery by the attorney-client privilege and by the work product doctrine.

*Attorney–Client Privilege for the McNeill Documents:*

 Kintera asserts attorney-client privilege for the McNeill documents, which are corporate communications within Kintera's company. It is well-known that the attorney-client privilege applies when the client is a corporation. *Upjohn*, 449 U.S. at 390, 101 S.Ct. 677. In a corporation, it may be necessary to collect information relevant to a legal problem from middle management or non-management personnel as well as from top executives. *Id.* at 391, 101 S.Ct. 677.

However, not all communications within a corporations are privileged. *See Cuno, Inc. v. Pall Corp.*, 121 F.R.D. 198 (E.D.N.Y.1988), a case involving patent infringement claims, in which the defendants moved to compel plaintiff to produce documents that were withheld under attorney-client privilege, or alternatively, work product doctrine. The court found that for some of the documents, it was evident from the **nature of the communication** that it was not made primarily for the purpose of obtaining legal advice, therefore, those documents were not protected. For the documents the court found were protected, the court noted that "it was apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice." The court stated:

> In general, the corporate client consists of corporate employees, acting at the direction of their corporate superiors, who communicate to counsel that which is needed to supply the basis for legal advice. The privilege protects the giving of information to the lawyer to enable him to give sound and informed advice.
>
> . . .
>
> In order for the privilege to apply, (1) the communication should have been made for the purpose of securing legal advice; (2) the employee making the communication should have done so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication should have been within the scope of the employee's duties; and (5) the communication should not have been disseminated beyond those persons who need to know the information."

*Cuno*, 121 F.R.D. at 203.

Under *Cuno*, the documents meet the attorney-client privilege requirements. As in *Cuno*, the communications between employees were for the purpose of transmitting information to counsel for advice. This is reflected in Kintera's privilege log in the description of purpose for each communication[3]. The employee making the communication (McNeill) did so at the direction of his corporate superior, in-house counsel. The superior made the request so that the corporation could secure legal advice from in-house counsel. The subject matter, "document collection efforts related to demonstration CDs," was within the scope of the employee's duties, as it directly relates to Kintera's business. Finally, the communications do not appear to have been disseminated beyond those who need to know the information, as they were exchanged between a narrow group of employees, the VP of sales, the CEO, VP of operations, the sales

---

3. "Confidential communication reflecting legal advice and written at the direction of counsel for the purpose of obtaining information necessary to provide legal advice related to this litigation." Kintera's Supplemental Privilege Log, Document Nos. 36, 41, 65, and 70–78.

group, and a secretary. From this evidence, as in *Cuno,* it is "apparent that the communication from one employee to another was for the purpose of the second employee transmitting the information to counsel for advice."

Convio argues the McNeill documents appear to be created for a business purpose, and not a legal purpose. Additionally, Convio speculates, without citing specific evidence, that the communications were not made in seeking legal advice, were not prepared in anticipation of litigation, were not within scope of employees official duties, and that nor was there any indication they were only between need-to-know employees. Courts have made the distinction between communications seeking business advice and communications seeking legal advice. In *F.C. Cycles Int'l, Inc. v. Fila Sport, S.p.A.,* 184 F.R.D. 64 (D.Md.1998), plaintiff brought a claim of improper termination of its license and sought discovery of, among other things, a memorandum it alleged contained business but not legal advice from counsel. The *F.C. Cycles* court found the memorandum at issue was not requested or needed by the attorney to render further legal advice. The court outlined the attorney-client privilege and distinction between legal versus business advice as:

> "Communications between corporate counsel and company personnel are privileged so long as the information is relayed for the purpose of obtaining legal advice.
>
> . . .
>
> It is the **content of the communication** that determines whether the privilege applies. What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *F.C. Cycles,* 184 F.R.D. at 71–72. (emphasis added)

The only evidence Convio cites to support its argument is that, given the subject of the communications, "document collection efforts

related to demonstration CDs," Convio concludes the communications were made in the regular course of business. However, the basis for this lawsuit is Kintera's claims that Convio misappropriated trade secrets contained on Kintera's demonstration CD.

Moreover, the dates the emails were sent further indicate they were created in anticipation of litigation, as they occur just before and up to the very date Kintera filed its complaint on February 11, 2002.[4] It is reasonable to believe that email communications between Kintera's employees regarding "document collection efforts related to demonstration CDs" made just prior to the filing of Kintera's complaint, were made in anticipation of this lawsuit and were "relayed for the purpose of obtaining legal advice." *Id.* Therefore, this Court concludes the McNeill documents satisfy the requirements of protection from discovery under the attorney-client privilege.

*Work Product Protection for the McNeill Documents:*

▄▄▄▄ Kintera also claims the work product protection applies to the McNeill documents. Courts have made the course of business distinction, finding that work product protection does not apply to documents not created in preparation of litigation but in the ordinary course of business. *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.,* 160 F.R.D. 437 (S.D.N.Y.1995) (Furthermore, the content of that document reveals that the purpose for its creation was not preparation for litigation, but furtherance of a business transaction). Convio contends, Kintera's email communications were not created as preparation for litigation, but were pre-existing documents which were collected by an employee and later transmitted to an attorney.

Kintera's supplemental privilege log of July 21, 2003, states the purpose of the McNeill documents are that the communications each represent a "[c]onfidential communication reflecting legal advice and written at the direction fo[of] counsel for the purpose of

---

**4.** The dates of the emails are February 2, February 4, February 7, and nine emails on February 11, 2002.

**516**

obtaining information necessary to provide legal advice related to this litigation." Kintera also submitted in-house counsel's declaration, which stated,

> [the McNeill documents] were authored at the behest of attorneys. J.P. McNeill, Kintera's Vice President of Sales, **created these emails at my direction in anticipation of this litigation.** Although I did not speak directly with Mr. McNeill about these emails, I spoke with Allen Gruber, Kintera's Executive Vice President, who spoke to Mr. McNeill on my behalf. Mr. McNeill contacted Kintera [sic] sales force, and then, in these emails, forwarded information he obtained from the sales force to Denise Clancy, who was at the time Mr. McNeill's secretary, and Mr. Gruber. Michael Aufichtig, a recipient of one of the emails, is a Kintera sales representative. (Rahman Decl. Paragraph 6) (emphasis added)

From Kintera's representation on its privilege log and the declaration of in-house counsel, Mr. Rahman, it is apparent that the McNeill documents "would not have been generated but for the pendency or imminence of litigation." Kintera's burden being met, the McNeill documents are protected under the work product doctrine as well.

## CONCLUSION

After due consideration of the parties' memoranda and exhibits, and for the reasons set forth above, the Court hereby DENIES Kintera's Motion to Compel Production of the TeamRaiser document, and GRANTS in part and DENIES in part Convio's Motion to Compel.

IT IS SO ORDERED.